IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FIRST NONPROFIT INSURANCE COMPANY, | : <br> : <br> : CIVIL ACTION <br> : |
| Plaintiff, | : |
| v. | : No. 09-465 |
| DENISE D. ALEXANDER, | : <br> : |
| Defendant. | : |

MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                **JULY 27, 2009**

      Presently before the Court is a Motion to Intervene and Stay filed by James Tyler ("Tyler"), Guardian *ad Litem* for Nyfese Taylor ("Taylor"). For the reasons set forth below, Tyler's Motion will be denied.

**I.      FACTS**

      Plaintiff First Nonprofit Insurance Company ("FNIC"), an insurance company domiciled in Illinois, issued a "Nonprofit Multiple Peril Policy" and an "Umbrella Liability Policy" to New Foundations, Inc. ("New Foundations"), both effective from July 1, 2007 through July 1, 2008 (collectively, "the Policies"). (Decl. J. Compl. ¶ 3.) New Foundations is a nonprofit corporation incorporated in the Commonwealth of Pennsylvania, which at all relevant times provided foster care services to the Philadelphia Department of Human Services ("DHS") pursuant to a contract with the City of Philadelphia. (Taylor Compl. ¶ 4.) Defendant Denise D. Alexander ("Alexander") was, at all relevant times, a foster parent chosen by New Foundations. (Id. ¶ 2.) Pursuant to an endorsement in the Policies extending coverage to foster parents, Alexander

qualified as an insured under the Policies, subject to certain conditions.  (Decl. J. Compl. ¶ 17.) From August 17, 2006 to November 11, 2006, DHS placed Taylor, a minor, in Alexander's home.  (Id. ¶ 6.)

On June 5, 2008, Alexander was arrested by the Philadelphia police for allegedly abusing Taylor, and charged with aggravated assault, simple assault, criminal conspiracy, unlawful restraint, false imprisonment, endangering the welfare of a child, reckless endangerment, and possession of an instrument of a crime (the "underlying criminal action").[1]  (Mot. to Intervene at 3.)  Alexander retained defense attorney Thomas Burke, Esquire, and was released on bail.  (Id.)

On February 22, 2008, Taylor, by his mother and natural guardian, filed a Complaint in the Court of Common Pleas of Philadelphia County under Civil Action No. 2958, February Term, 2008 (the "underlying lawsuit").[2]  The Complaint alleges that Taylor suffered neglect and bodily injuries while in the custody of Alexander.  (Taylor Compl. ¶¶ 19-25.)  The Complaint further alleges that New Foundations was grossly negligent in providing foster care to Taylor. (Id. ¶ 36.)  On March 20, 2008, New Foundations submitted the Complaint to FNIC seeking coverage under the Policies.  (Decl. J. Compl. ¶ 13.)

On April 10, 2008, FNIC retained William Banton, Esquire ("Banton") to represent Alexander in the underlying lawsuit.  FNIC proceeded to defend Alexander in the underlying lawsuit while it investigated the coverage owed under the Policies.  (Id. ¶ 14.)  On May 16, 2008,

---

[1] The underlying criminal action is captioned Commonwealth v. Alexander, No. CP-51-CR-0014766-2008, in the Court of Common Pleas of Philadelphia County.

[2] On June 27, 2008, Taylor filed an Amended Complaint in the underlying lawsuit, again naming Alexander and New Foundations as defendants.  The Amended Complaint contained essentially the same allegations against Alexander as the original Complaint, but in addition, brought claims against Alexander for assault and battery, negligence, and punitive damages.

2

FNIC avers that it sent a letter via certified mail to Alexander advising that FNIC would continue to defend Alexander in the underlying lawsuit, subject to certain exclusions and conditions, as well as a complete reservation of rights under the Policies and Pennsylvania law.  (Id. ¶¶ 15-17.)  Subsequent to sending the May 16, 2008 letter, FNIC avers that it learned that Alexander was refusing to cooperate with Banton in the defense of the underlying lawsuit, and that a Motion for Default Judgment had been filed against Alexander by counsel for Taylor.  (Id. ¶ 18.)  On May 22, 2008, FNIC contends that it sent a letter via overnight mail to Alexander advising that the Policies required her to cooperate with FNIC and Banton in the investigation and defense of the underlying lawsuit.[3]  (Id. ¶ 19.)  FNIC avers that the letter further stated that Alexander's failure to cooperate could result in Alexander losing coverage under the Policies and FNIC withdrawing its defense of her in the underlying suit.  (Id.)

On September 24, 2008, FNIC alleges that Taylor, by counsel, served interrogatories on

---

[3] FNIC asserts that the relevant condition in the "Nonprofit Multiple Peril Policy" states in pertinent part:

F.  Coverage Conditions
. . . .
3.  Duties in the Event of Occurrence, Claim or Suit
. . . .
c.  You and any other Insured must:
. . . .
(3)  Cooperate with us in the investigation, settlement or defense of the claim or suit . . . .

FNIC further asserts that the relevant condition in the "Umbrella Liability Policy" states in pertinent part:

SECTION VII - CONDITIONS
. . . .
o.  Duties in the Event of Occurrence or Offense, Claim or Suit Covered by This Policy
. . . .
(2)  If any claim is made or suit is brought against any Insured which may result in a claim against this insurance you must:
. . . .
(c)  Cooperate with us in the investigation, settlement or defense of the claim or suit.

3

Alexander through Banton, which were to be answered by October 24, 2008.  (Id. ¶ 22.)  On October 3, 2008, Taylor, by counsel, served insurance interrogatories, expert interrogatories and requests to produce on Alexander through Banton, which were to be answered by November 3, 2008.  (Id.)  FNIC claims that Banton attempted to contact Alexander numerous times by telephone and regular mail to schedule meetings with Alexander to comply with these deadlines.  (Id. ¶ 23.)  Nevertheless, FNIC asserts that Alexander refused to cooperate with FNIC and Banton by failing to return phone calls and letters from Banton, and failing to appear at scheduled meetings.  (Id. ¶ 24.)  FNIC argues that as a result of Alexander's failure to cooperate, Banton was not able to properly prepare responses to Taylor's written discovery requests or to obtain Alexander's verification to the Answer to the Amended Complaint.  (Id.)

     FNIC avers that on December 1, 2008, the court in the underlying lawsuit entered an Order requiring Alexander to serve her responses to all of Taylor's interrogatories by December 10, 2008, or suffer sanctions.  (Id. ¶ 25.)  FNIC claims that it retained an investigative service to personally serve Alexander with a letter reiterating her obligation to cooperate with Banton pursuant to the terms of the Policies.  (Id. ¶ 29.)  FNIC claims that on December 9, 2008, the letter was personally served on Alexander's father at her residence.  (Id. ¶ 30.)  FNIC asserts that the letter scheduled an appointment for Alexander to meet with Banton at his office on the afternoon of December 10, 2008 to prepare her responses to Taylor's written discovery and to verify the Answer to the Amended Complaint, as required by the December 1, 2008 court Order.  (Id. ¶ 27.)  FNIC further asserts that its investigator returned to Alexander's residence on the morning of December 10, 2008 and again met with Alexander's father, who stated that Alexander was not home, but that he had given the December 9, 2008 letter and enclosed

documents to her the previous evening.  (Id. ¶ 31.)  FNIC avers that Alexander failed to attend the scheduled meeting with Banton on December 10, 2008, and did not contact either FNIC or its counsel to explain her inability to attend the meeting.  (Id. ¶¶ 32-33.)

On January 30, 2009, FNIC filed a Complaint for Declaratory Judgment in this Court, alleging that as of the filing of its Complaint, neither FNIC nor its counsel had received any communication from Alexander in response to the December 9, 2008 letter or in response to any of Banton's attempts to schedule a time to verify the Answer to the Amended Complaint and to complete the responses to Taylor's written discovery.  In its Complaint, FNIC claims that Alexander's failure to cooperate in the defense of the underlying lawsuit:  1) constitutes a breach of the Cooperation Condition; 2) has "substantially impacted and prejudiced FNIC's ability to participate meaningfully in the Underlying Lawsuit"; 3) releases FNIC from its "duty to defend Alexander in the Underlying Lawsuit with respect to any complaints, claims, allegations, or demands against her"; and 4) entitles FNIC to deny coverage under the Policies "to indemnify Alexander, as necessary, for any and all damages, costs, and judgments resulting from any of the claims asserted against her in the Underlying Lawsuit."  (Id. at 8-9.)

On May 12, 2009, Tyler filed the instant Motion to Intervene and Stay, requesting that he be allowed to intervene in FNIC's Declaratory Judgment action, and that this Court stay FNIC's action until the underlying criminal action has reached a conclusion.  Tyler asserts that he must be permitted to intervene because "FNIC is seeking an affirmative declaration of Nyfese Taylor's rights, specifically a declaration that Nyfese Taylor has no interest under the policies."[4]  (Mot. to

---

[4] The language in FNIC's Declaratory Judgment Complaint, which Tyler contends allows him to intervene in the instant action, states:  "[FNIC] prays that this Court . . . [f]ind and declare that [Taylor] . . . has no interest under the Policies as a judgment creditor, assignee, sanction creditor, or in any other capacity arising out of the

Intervene at 5.)

## II. DISCUSSION

### A. Intervention

Tyler seeks to intervene in FNIC's Declaratory Judgment action pursuant to Federal Rule of Civil Procedure 24. Rule 24(a) provides in relevant part:

> **(a) Intervention of Right.** On timely motion, the court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). The Third Circuit has held that a litigant seeking to intervene under this provision must establish: (1) a timely application for leave to intervene; (2) a sufficient interest in the underlying litigation; (3) a threat that the interest will be impaired or affected by the disposition of the underlying action; and (4) that the existing parties to the action do not adequately represent the prospective intervenor's interests. Liberty Mut. Ins. Co. v. Treesdale, Inc., 419 F.3d 216, 220 (3d Cir. 2005). "Each of these requirements must be met to intervene as of right." Id. (citing Mountain Top Condo. Assoc. v. Dave Stabbert Master Builder, Inc., 72 F.3d 361, 366 (3d Cir. 1995)). "In general, a mere economic interest in the outcome of litigation is insufficient to support a motion to intervene. Thus, the mere fact that a lawsuit may impede a third party's ability to recover in a separate suit ordinarily does not give the third party a right to intervene." Id. at 221.

Under the factors set forth by the Third Circuit, this Court finds that Tyler does not have a

---

claims and losses alleged and complained of against ALEXANDER in the Underlying Lawsuit . . . ." (Decl. J. Compl. at 9-11.)

sufficient interest in FNIC's Declaratory Judgment action to permit him to intervene. As previously stated, Tyler asserts that he must be permitted to intervene because "FNIC is seeking an affirmative declaration of Nyfese Taylor's rights, specifically a declaration that Nyfese Taylor has no interest under the policies." (Mot. to Intervene at 5.) However, the affirmative declaration sought by FNIC is merely a declaration that Taylor has no economic interest in the outcome of the underlying lawsuit. Thus, FNIC seeks a declaration involving a purely monetary interest, as opposed to a legal interest, in the underlying lawsuit. This type of interest is insufficient to warrant Tyler's intervention in the instant action. See Treesdale, 419 F.3d at 221.

Similarly, Tyler does not meet the requirement for permissive intervention under Rule 24(b), which states that a court may allow an applicant to intervene "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b). With respect to permissive intervention, the Third Circuit has held that "[w]here a proposed intervenor has only a contingent financial interest in a declaratory judgment action to establish insurance coverage, he/she cannot accurately claim that there are common questions of law or fact . . . ." Treesdale, 419 F.3d at 228 (citing Liberty Mut. Ins. Co. v. Pacific Indem. Co., 76 F.R.D. 656, 660 (E.D. Pa. 1977)).

Here, Tyler's only purpose for intervening is to adjudicate a claim for a purely monetary interest in the underlying lawsuit, and this "contingent financial interest" is insufficient to permit permissive intervention under Third Circuit precedent. See Treesdale, 419 F.3d at 228.

**B.    Stay**

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket . . . ." Landis v. N. Am. Co., 299 U.S. 248,

254 (1936); Mendez v. Puerto Rican Int'l Cos., 553 F.3d 709, 712 (3d Cir. 2009) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 20 n.23 (1983)) ("[The] decision [to stay litigation] is one left to the district court . . . as a matter of its discretion to control its docket."); Nicholas v. Wyndham Int'l, Inc., 149 Fed. Appx. 79, 81 (3d Cir. 2005) ("In general, the power to temporarily stay proceedings lies within the informed, sound discretion of the district courts."). While the ordering of an indefinite stay can constitute an abuse of discretion, Dover v. Diguglielmo, 181 Fed. Appx. 234, 237 (3d Cir. 2006) (citing Landis, 299 U.S. at 255), the Court is, nonetheless, empowered to stay proceedings pending the outcome of related proceedings. See Standard Sanitary Mfg. Co. v. United States, 226 U.S. 20, 52 (1912) (trial court has discretion under the Sherman Act to determine whether to stay civil action pending outcome of criminal trial); Cofab, Inc. v. Phila. Joint Bd. Amalgamated Clothing & Textile Workers Union, AFL CIO-CLC, 141 F.3d 105, 110 (3d Cir. 1998) (declining to issue writ of mandamus reversing an order staying a federal action pending completion of related proceedings before the National Labor Relations Board); Commonwealth Ins. Co. v. Underwriters, Inc., 846 F.2d 196, 199 (3d Cir. 1988) (district court has discretion to stay litigation among non-arbitrating parties pending the outcome of a related arbitration). Furthermore, the Court may order such a stay *sua sponte*. See Maurer v. Int'l Union United Auto., 487 F. Supp. 731, 740 (M.D. Pa. 1979) (citing Landis, 299 U.S. at 254) ("I do believe that it is both proper and desirable for the court to stay these proceedings *sua sponte* . . . . The court has the inherent authority to direct that there be such a stay.").

While this Court finds that Tyler lacks a sufficient interest in this matter to warrant intervention, we nevertheless find it advisable to stay the instant action until the underlying

8

criminal action has reached a conclusion. Contrary to FNIC's contentions, we cannot say with certainty that Alexander will not be more willing to cooperate in the underlying lawsuit once the criminal proceedings have concluded and the risk of self-incrimination has been alleviated. <u>See</u> <u>United States v. Kordel</u>, 397 U.S. 1, 11-13 (1970) (holding that a party may assert Fifth Amendment privilege in not responding to discovery in a civil action because, if a defendant provides answers to civil discovery, the answers may be used against him in an ongoing criminal prosecution). Moreover, counsel for Tyler has informed the Court that the trial in the underlying criminal action is scheduled to begin in or around December of this year. Thus, this Court does not believe that the length of the stay will result in any prejudice to FNIC. As such, we will deny Tyler's Motion, but nonetheless stay this action *sua sponte* until the completion of the underlying criminal action against Alexander.

      An appropriate Order follows.